UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------X

STEPHEN ZIOLKOWSKI,                    Civil Action No.

               Plaintiff,

        -against-

NATIONSTAR MORTGAGE LLC, d/b/a
MR. COOPER, AND DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS
TRUSTEE FOR HARBORVIEW
MORTGAGE LOAN TRUST MORTGAGE
LOAN PASS-THROUGH CERTIFICATES,
SERIES 2006-5,

              Defendants.

-------------------------------------------------------X

### VERIFIED COMPLAINT OF PLAINTIFF STEPHEN ZIOLKOWSKI

Now comes the Plaintiff, Stephen Ziolkowski (hereinafter "Ziolkowski" or "Plaintiff"), by and through their counsel, and state as follows for their Complaint against Defendants Nationstar Mortgage LLC, d/b/a Mr. Cooper (hereinafter "Mr. Cooper" or "Defendant") and Deutsche Bank National Trust Company, as Trustee for Harborview Mortgage Loan Pass-Through Certificates, Series 2006-5 ("Deutsche Bank"):

### PARTIES, JURISDICTION, AND VENUE

1. Ziolkowski is a natural resident of the Commonwealth of Massachusetts and the owner of residential real property, located at, and commonly known as 9 Lafayette Street, Quincy, Massachusetts 02169 (the "Property").

2. Mr. Cooper is a limited liability company with a principal office located at

8950 Cypress Waters Blvd., Coppell, TX 75019.

3.     Mr. Cooper is a mortgage loan servicer that has servicing responsibilities for the Loan. Mr. Cooper provides collection and management services on the Loan that is the subject of this action.

4.     Deutsche Bank is, upon information and belief, successor in interest to various lending institutions who may or may not have assigned the alleged note to said entity, and is a national trust company with a principal office located at 2000 Avenue of the Stars, Suite 1000, Los Angeles, CA 90067.

5.     Mr. Cooper performs its services on behalf of Deutsche Bank and is therefore an agent thereof.

6.     Mr. Cooper's role in pursuing the Plaintiff to collect on the Loan meets the definition of "Servicing" contained in both 12 C.F.R. §1024.02 and in 12 U.S.C. §2605(i)(3).

7.     Mr. Cooper is a "debt collector" as that term is defined under federal, state, and common law.    See supra.

8.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, et seq. (RESPA). This action is filed, inter alia, to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.35(b) and relevant portions of 12 C.F.R. §1024.41, et seq.

9.     This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

10.    Venue lies in this District pursuant to 28 U.S.C. §1391(b), as Plaintiffs reside and the Property is located in Norfolk County in the Commonwealth of Massachusetts.

## INTRODUCTION AND FACTS

11.    Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

12.    In or about October of 1999, Ziolkowski and his then wife purchased the Property and executed a note and a mortgage on the Property to secure the Note in favor of by non-party Citizens Bank.

13.    Plaintiff has maintained, and, to date, continues to maintain the Property as his primary, principal residence and family home since this time.

14.    At some point in 2005, upon information and belief, Ziolkowski refinanced the property non-party Patriots Mortgage, and then again, in 2006, with upon information and belief, non-party GMAC Mortgage Company.

15.    In or about 2005, Ziolkowski and his former wife were divorced, wherein Ziolkowski retained the property and subsequently refinanced the property with, upon information non-party Countrywide Mortgage Company aka Countrywide Finance ("Countrywide").

16.    From its inception, Ziolkowski has dealt with numerous parties, due to sales, transfers, servicing transfers, refinances, and/or other reasons, including refinancing after his prior mortgage was the part of the subject matter of a civil action by the Massachusetts Attorney General against non-party RBS Financial Products Inc. regarding "unfair residential subprime mortgage loans".

17.    Ziolkowski believes other financial institutions have or had, or have or had claimed to have or had, some interest in his property without being fully aware of the legal relationships.

18.    In 2009, Ziolkowski defaulted on his mortgage, then being serviced by, upon information and belief, Countrywide and/or successor Bank of America NA.

19.    At some time after this point, and upon information and belief without notice to the Plaintiff, all contact regarding Ziolkowski's mortgage began originating from the Defendant Mr. Cooper.

20.    Ziolkowski subsequently spent years fruitlessly attempting to work with Mr. Cooper to come to a reasonable resolution of his mortgage difficulties.

21.    Ziolkowski learned the Property had yet again entered the non-judicial foreclosure process in or about August of 2015. See Letter from Korde & Associates, P.C. to Ziolkowski dated August 7, 2015, a true and accurate copy of which is attached hereto as Exhibit A.

22.    Given his past issues with alleged mortgage issues and/or servicers, Ziolkowski, through counsel, file a Request for Information under Regulation X of the Real Estate Settlement Procedures Act ("RESPA" or "Regulation X") with Mr. Cooper. See 8/24/15 RFI, attached hereto as Exhibit B (without exhibits).

23.    The 8/24/15 RFI requested, inter alia:

     i. The full name and address of the entity that is the owner or assignee for this loan;
    ii. All servicers of the loan;
   iii. Specifically requested copies "of the mortgage, note, allonge and all assignments";
   iv. Pertinent sections of any "Pooling and Servicing Agreement"; and
    v. A complete pay-off statement.

24.    No acknowledgment or response was subsequently received.

25.    Given the lack of response and continued receipt of alleged default letters, Ziokowski, through counsel, on September 6, 2015, filed a debt dispute letter with the Defendant through their agents.   See 9/6/15 Dispute Letter, attached hereto as Exhibit C (without exhibits).

26.    The 9/6/15 Dispute Letter requested, inter alia:

    i. An explanation of how any amounts alleged due were calculated;
    ii. Copies of any papers that showed Ziolkowski owed any debt to Defendant;
    iii. The identity of the original creditor; and
    iv. Any assignments or other documents proving actual legal ownership of the debt and the right to collect thereon.

27.    The 9/6/15 Dispute Letter further specifically stated that the alleged claim was disputed and again requested validation.

28.    A subsequent Request for Information was further filed on September 8, 2015.   See 9/8/15 RFI, attached hereto as Exhibit D (without exhibits).

29.    The 9/8/15 RFI requested, inter alia:

    i. The name and address of the entity that is the owner or assignee for the alleged loan;
    ii. All servicer information;
    iii. Copies of the mortgage, note, allonge and all assignments;
    iv. Pertinent sections of any "Pooling and Servicing Agreement"; and
    v. A complete pay-off statement.

30.    No acknowledgement or response was received regarding either the 9/6/15 Dispute Letter or the 9/8/15 RFI.

31.    After an additional extended time of eventual fruitless negotiations, Ziolkowski, through counsel, issued yet another Request for Information under RESPA to the Defendant.   See 3/22/18 RFI, attached hereto as Exhibit E (without exhibits).

32.   The 3/22/18 RFI requested, inter alia:

   i.   The name and address of the entity that is the owner or assignee for
        the alleged loan;
  ii.   All servicer information;
 iii.   Copies of the mortgage, note, allonge and all assignments;
  iv.   Pertinent sections of any "Pooling and Servicing Agreement"; and
   v.   The amount required to bring the alleged loan current.

33.   Again, no acknowledgement or response to the 3/22/18 RFI was received by the Plaintiff.

34.   Given this, on May 1, 2018, Ziolkowski, through counsel, filed a Notice of Error under RESPA with the Defendant.   See 5/1/18 NOE, attached hereto as Exhibit F (without exhibits).

35.   In addition to laying out the Defendant's failure to respond, the 5/1/18 NOE reiterated all past requests.

36.    Again, no acknowledgment or response to the 5/1/18 NOE was received by the Plaintiff.

37.   All of the above discussed Requests for Information and Notices of Error under Regulation X ("Reg. X Notices") were sent, as required, to the address provided by the Defendant for such correspondence.   See, e.g., Mortgage Statement attached hereto as Exhibit G.

38.   All of the Reg. X Notices requested information concerning ownership and legal authority concerning the mortgage, including but not limited to, the actual mortgage and note.

39.   Plaintiff reiterates that none of the Reg. X Notices were responded to, and therefore, despite the legal requirements to do so, the Defendant has not provided any proof of authority to collect or foreclose upon the Property.

40.    Given these issues, Ziolkowski, through counsel, caused to be delivered to the Defendant a Demand Letter, under M.G.L. Ch. 93 A.   See 11/29/18 93A Demand, attached hereto as Exhibit H.

41.    As of this date, no reasonable response has been received by the Plaintiff.

42.    During this period, Ziolkowski's father, previously diagnosed with non-Hodgkin lymphoma, despite not being on the mortgage or having any relationship with the Property, received numerous contacts from the Defendant and/or their agents, to the point he believed he was being intimidated into becoming involved in his son's situation.

43.    Ziolkowski has learned that the Defendant has now scheduled a sale of his property for January 4, 2019.

44.    Massachusetts law requires an entity foreclosing on residential property to be the "person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder". See, e.g., Eaton v. Federal National Mortgage Association, 462 Mass 569 (2012).

45.    Despite numerous legally binding requests, the Defendant has failed to provide such proof of this status.

46.    As a direct and proximate result of Defendants actions and/or inactions, Ziolkowski has suffered substantial out-of-pocket costs, including but not limited to, additional postage and travel costs, and attorney's fees.

47.    As a direct and proximate result of the Defendant's actions, Ziolkowski has suffered severe emotional distress, including in or about July of 2018, being admitted to the hospital with atrial fibrillation caused by increased stress.

48.   Ziolkowski has suffered damaged and lost significant relationships, including, despite a strong desire to begin a family, a number of potential mates terminating their relationship due to the actions of the Defendant.

49.   Ziolkowski's relationship with his father was also severely infringed upon as noted above.

50.   As a result of the Defendant's actions as described above, Plaintiff was directly caused to suffer (and continue to suffer from) severe actual damages, including but not limited to the fear of living in foreclosure, personal humiliation, embarrassment, mental anguish or emotional distress, attorney's fees, out of pocket costs expended while continually attempting to rectify the situation, and the loss of substantial personal relationships.

51.   Furthermore, as a direct and proximate result of the Defendant's actions and/or inactions, and the resultant uncertainty over the status of the Property, the Plaintiff has been unable and unwilling to put in necessary upkeep to the Property, leading to the continual degrading thereof.

52.   As of December 28, 2018, over 19,000 consumer complaints had been filed against the Defendant with the Consumer Financial Protection Bureau (CFPB).   The CFPB's consumer complaint database can be accessed at the following hyperlink: https://www.dannlaw.com/complaint-database/ (last visited on December 28, 2018)

53.   Given all of the information provided to the CFPB, the Defendant has been listed on the DannLaw's "Scoundrels, Scams, and Cheats Hall of Shame", available at https://www.dannlaw.com/scoundrels-scams-and-cheats-hall-of-shame/?utm_source=Dan nLaw+consumer+complaint+database&utm_campaign=New+personnel&utm_medium=e

mail (last visited on December 28, 2018).

## COUNT ONE: VIOLATION OF 12 U.S.C. § 2605(k)
## (Failure to acknowledge receipt of a Request for Information)

54.   Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

55.   RESPA is a consumer protection statute that aims to promote transparency and communication between borrowers and lenders.

56.   Among other things, 12 U.S.C. § 2605 sets out specific notice and disclosure requirements with which servicers of federally-related mortgage loans must comply.

57.   Servicers who fail to comply with these requirements are liable to borrowers for any actual damages incurred by the borrowers because of such failure. 12 U.S.C. § 2605(f)(1)(A).

58.   The alleged loan is a federally regulated mortgage loan as defined by 12 C.F.R. § 1024.2(b).

59.   The Defendant is a servicer within the meaning of RESPA as implemented by Regulation X.

60.   Defendant was obligated to acknowledge receipt of the RFI in writing within five (5) business days. 12 C.F.R § 1024.36(c), which states:

> §1024.36 Requests for information.
> (c) Acknowledgment of receipt. Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request.

61. Section 6, Subsection (k) of RESPA states in relevant part that "[a] servicer of a federally related mortgage shall not- (E) fail to comply with any other obligation found

by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k).

62. Section 1024.36 (Request for Information) of Regulation X was promulgated pursuant to Section 6 of RESPA and thus subject to RESPA's private right of action. See 78 Fed. Reg. 10696, 10714, fn. 64 (Feb. 14, 2013) ("The [CFPB] notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations"). See also 78 Fed. Reg. at 10737, 10753 (the CFPB noting that Section 1024.36 implements Section 6(k)(1)(D)).

63. The CFPB's authority to prescribe such regulations under Section 2605(k)(1)(E), is stated in Section 2617 of RESPA: "The [CFPB] is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter. 12 U.S.C. § 2617.

64. Defendant has failed or refused to comply with 12 C.F.R. § 1024.36(c) in that Defendant did not provide a written acknowledgement to any of the previously discussed Requests for Information under Regulation X, within the required timeframe.

65. The Defendant has shown a pattern and practice of such behavior, both individually with the Plaintiff and collectively as shown through the vast complaints received nationwide by the CFPB.

66. As a direct and proximate result of Defendant's actions and/or inactions, Ziolkowski has suffered damages as described above.

**Count TWO: VIOLATION OF 12 U.S.C. § 2605(k)**
**Failure to Respond — Investor Information**

67. Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

68. Defendant was obligated to provide an adequate response to the above described RFI requests regarding investor and/or owner information in writing within ten (10) days. 12 C.F.R. § 1024.36(d)(2)(i)(A).

69. Defendant did not respond to any of the above discussed RFI's within the time period provided by 12 C.F.R. § 1024.36(d)(2)(i)(A) or at all.

70. Defendant was required to provide the Plaintiff with the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan not later than ten (10) days (excluding legal public holidays, Saturdays, and Sundays) after receipt of the RFI. 12 C.F.R. § 1024.36(d)(2)(i)(A).

71. Section 6, Subsection (k) of RESPA states in relevant part:

> A servicer of a federally related mortgage shall not—
> (D) fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan; or
> (E) fail to comply with any other obligation found by the [CFPB], by regulation,
> to be appropriate to carry out the consumer protection purposes of this chapter.
> 12 U.S.C. § 2605(k).

72. Section 1024.36 (Request for Information) of Regulation X was promulgated pursuant to Section 6 of RESPA and thus subject to RESPA's private right of action.

73. Defendant has not provided the information requested within the RFIs within the required timeframe or at all.

74. As such, Defendant has violated 12 U.S.C. § 2605(k)(1)(D).

75. The Defendant has shown a pattern and practice of such behavior, both individually with the Plaintiff and collectively as shown through the vast complaints received nationwide by the CFPB.

76. As a direct and proximate result of Defendant's actions and/or inactions, Ziolkowski has suffered damages as described above.

## COUNT THREE: VIOLATION OF 12 U.S.C. § 2605(k)
### Failure to Respond

77. Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

78. Defendant was obligated to provide an adequate response to the RFI's in writing within thirty (30) days. 12 C.F.R. § 1024.36(d)(2)(i)(B).

79. Defendant did not respond to Plaintiff(s) RFI within the time period provided by 12 C.F.R. § 1024.36(d)(2)(i)(B).

80. Defendant has failed or refused to comply with 12 C.F.R. § 1024.36(d)(2)(i)(B) in that Defendant did not provide a sufficient written response to any of the RFIs within the required timeframe, or at all.

81. As such, Defendant has violated 12 U.S.C. § 2605(k)(1)(E).

82. The Defendant has shown a pattern and practice of such behavior, both individually with the Plaintiff and collectively as shown through the vast complaints received nationwide by the CFPB.

83. As a direct and proximate result of Defendant's actions and/or inactions, Ziolkowski has suffered damages as described above.

## COUNT FOUR: VIOLATION OF 12 C.F.R. § 1024.35(d)

**(Failure to acknowledge receipt of a notice of error)**

84. Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

85. 12 C.F.R. §1024.35(d) states:

> Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error.

86. As stated above, Plaintiff, through counsel, sent a Notice of Error to Mr. Cooper on or about May 1, 2018.

87. The Defendant received the NOE on or about May 8, 2018. See Exhibit I.

88. Pursuant to 12 C.F.R. §1024.35(d), on or before May 15, 2017, Mr. Cooper was required to provide a written response acknowledging receipt of the NOE to the Plaintiff.

89. To date, the Plaintiff has not received any correspondence specifically acknowledging receipt of the 5/1/18 NOE.

90. The Defendant did not send any correspondence acknowledging their receipt of the NOE to the Plaintiff within five (5) business days of their receipt of the NOE, as required under 12 C.F.R. §1024.35(d).

91. Defendant's multiple and material violations of 12 C.F.R. §1024.35, et seq. create a private right of action in favor the Plaintiffs entitling them to actual damages, statutory damages of up to $2,000 per violation, and their costs and attorney fees.

92. As such, it is clear that Mr. Cooper's actions, in failing to send correspondence acknowledging their receipt of the NOE to Plaintiffs within five (5) business days of their receipt of the NOE, were in clear violation of 12 C.F.R. § 1024.35(d).

93. The Defendant has shown a pattern and practice of such behavior, both individually with the Plaintiff and collectively as shown through the vast complaints received nationwide by the CFPB.

94. As a direct and proximate result of Defendant's actions and/or inactions, Ziolkowski has suffered damages as described above.

### COUNT FIVE: VIOLATION OF 12 C.F.R. § 1024.35(e)
### (Failure to properly respond to a notice of error)

95. Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

96. 12 C.F.R. §1024.35(e)(1)(i) provides:

> Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:
> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

97. Plaintiff sent the NOE to Mr. Cooper on or about May 1, 2018.

98. The Defendant received the NOE on or about May 8, 2018.

99. No response was ever received.

100. As such, it is clear that the Defendant did not comply with 12 C.F.R. § 1024.35(e)(1)(i)(A) as no error was corrected.

101. Furthermore, in order to comply with the requirements of 12 C.F.R. § 1024.35 in relation to the 5/1/18 NOE, Mr. Cooper was required to respond in compliance with the explicit requirements of 12 C.F.R. § 1024.35(e)(1)(i)(B).

102. 12 C.F.R. § 1024.35(e)(1)(i)(B) provides that upon receiving the NOE, the servicer must conduct a _reasonable investigation_ and, if it finds no errors, _explain the reason(s) for how it arrived at such a conclusion_.

103. Rather than complying with the requirements of 12 C.F.R. § 1024.35(e)(1)(i)(B), Mr. Cooper failed to conduct a reasonable investigation and instead intentionally and/or negligently ignored the notice altogether.

104. Defendants actions and/or inactions, in failing to fully respond to the 5/1/18 NOE in compliance with the explicit requirements of either 12 C.F.R. § 1024.35(e)(1)(i)(A) or 12 C.F.R. § 1024.35(e)(1)(i)(B), constitute a clear violation of 12 C.F.R. § 1024.35(e).

105. The Defendant has shown a pattern and practice of such behavior, both individually with the Plaintiff and collectively as shown through the vast complaints received nationwide by the CFPB.

106. As a direct and proximate result of Defendant's actions and/or inactions, Ziolkowski has suffered damages as described above.

**COUNT SIX: DEBT COLLECTION**
**(The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.)**

107.    Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

108.    The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), was enacted, among other things "to eliminate abusive debt collection practices by debt collectors … and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

109.    To those ends, and relevant to this action, 15 U.S.C§ 1692d provides, in relevant part:

> A debt collector may not engage in any conduct the natural
> consequence of which is to harass, oppress, or abuse any person in
> connection with the collection of a debt.

110.    15 U.S.C. § 1692f provides, in pertinent part:

> A debt collector may not use unfair or unconscionable means to collect any
> debt… .

111.    15 U.S. Code § 1692c(b) specifically states:

> [W]ithout the prior consent of the consumer given directly to the debt
> collector, or the express permission of a court of competent jurisdiction, or as
> reasonably necessary to effectuate a postjudgment judicial remedy, a debt
> collector may not communicate, in connection with the collection of any debt,
> with any person other than the consumer[.]

112.    Ziolkowski is a "consumer" as that term is defined under 15 U.S.C. § 1692a(3).

113.    Ziolkowski is alleged to have incurred a financial obligation that was primarily for family, personal or household purposes, and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

114.    Given Ziolkowski was already in default when servicing of the Loan was transferred to the Defendant, Mr. Cooper is a "debt collector" as that term is defined under 15 U.S.C. § 1692a(6), and, based upon information and belief, is licensed as a "debt collector, loan servicer" in the Commonwealth of Massachusetts, DC2119.

115.    As noted above, Mr. Cooper made numerous direct contacts with the Plaintiff's father who is not a borrower on the alleged debt.

116.    The Plaintiff further contends that the Defendant made "false, deceptive, or misleading representation or means in connection with the collection of any debt," as described above, including but not limited to attempting to collect upon a debt for which they had failed to provide such documentation proving such debt and/or their legal authority to do so.

117.    Plaintiffs contend Mr. Cooper's above referenced behavior was "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

118.    Plaintiffs allege that by attempting to foreclose and sell the property, the Defendant further violated 15 U.S.C. § 1692f(1) by attempting to collect upon a debt in a manner not permitted by law.

119.    The Plaintiff was severely injured by Defendant's conduct as described above.

120.     "The FDCPA imposes strict liability on debt collectors for their violations [and]. . . [p]laintiff need only show a violation of one of the FDCPA's provisions to make out a prima facie case." <u>Harrington v. CACV of Colo., LLC</u>, 508 F.Supp.2d 128, 132 (D.Mass.2007).

**<u>COUNT SEVEN: UNFAIR & DECEPTIVE PRACTICES</u>**
**<u>(Consumer Protection Act, M.G.L. c. 93 § 49 and M.G.L. c. 93A)</u>**

121.     Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

122.     M.G.L. c. 93 § 49 prohibits the collection or attempted collection of a debt in an unfair, deceptive or unreasonable manner.

123.     Plaintiff's state the above facts show Mr. Cooper violated M.G.L. c. 93 §49, by attempting to collect a debt in an unfair, deceptive or unreasonable manner.

124.     A violation of M.G.L. c. 93 § 49 is also a violation of M.G.L. c. 93A.

125.     Mr. Cooper had an affirmative duty under RESPA to provide the documentation requested by the Plaintiff.

126.     This documentation was crucial to the Plaintiff for his understanding of any obligations and the care and upkeep of his family home.

127.     The Defendant failed in their duty to act.

128.     As discussed in detail above, Mr. Cooper had numerous additional duties under Regulation X of the Real Estate Settlement Procedures Act, which Shellpoint failed to act with reasonable diligence. Furthermore, 12 CFR 1024.38 specifically states that "[a] servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section."

129.     Taken as a whole, the Plaintiff's contend all of the above referenced actions by the Defendant were unfair and deceptive in violation of M.G.L. c. 93A.

130.     At all relevant times, Defendant was engaged in trade or commerce in Massachusetts within the meaning of M.G.L. c. 93A, §1.

131.     Ziolkowski is a "consumer" and the Loan and servicing thereof in question were consumer transactions as contemplated by M.G.L. c. 93A.

132.     Defendant engaged in unfair and deceptive practices, as set forth above, in violation of M.G.L. c. 93A, §2.

133.     Defendant's unlawful conduct was knowing and/or willful within the meaning of M.G.L. c. 93A, §9.

134.     Ziolkowski was injured in many ways by Defendant's actions, as stated above.

135.     On November 29, 2018, Plaintiff through counsel sent Defendant a demand for relief pursuant to M.G.L. c. 93A, §9.   Thirty days have elapsed since Defendant receipt of Plaintiff's Demand, and Defendant has not made a reasonable tender of settlement.

136.     Defendant's refusal to make a timely, reasonable and written tender of settlement was in bad faith with knowledge or reason to know that its conduct violated M.G.L. c. 93A, §2.

### COUNT SEVEN: MISREPRESENTATION
### (Intentional and/or Negligent)

137.     Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

138.     The Defendant has made numerous statements Plaintiffs' contend knew or should have known that such representations were false, including but not limited to attempting to collect upon the Loan without providing proof the Defendant had the authority to do so.

139.     Plaintiff relied upon such statements in numerous ways, including but not limited to attempting to negotiate with the Defendant for a number of years.

140.     Plaintiff's reliance was reasonable or justifiable in the circumstances, including but not limited to making payments under a proposed trial modification plan.

141.     Ziolkowski was severely injured based on the intentional and/or negligent misrepresentations of the Defendant.


## COUNT EIGHT: UNJUST ENRICHMENT

142.     Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

143.     Ziolkowski has unjustly enriched Mr. Cooper by making numerous alleged unwarranted payments

144.     Those ill-received payments have caused the Plaintiff financial hardship, destroyed equity in his home, and have caused him great emotional stress and financial uncertainty.

## COUNT NINE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

145.     Plaintiff restates and incorporates all of his statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

146.   Mr. Cooper knowingly and intentionally is attempting to foreclose on Ziolkowski's Property without having first provided, despite numerous requests, proof of their legal authority to do so, as required under Federal Law.

147.   The Defendant's actions are in violation of public policy, federal and state law. Stripping away one's rights of ownership of a home while acting in bad faith is contrary to long recognized principles of law and public policy.

148.   Ziolkowski's history with the Defendant over the years has caused Plaintiff severe emotional distress as well as the other previously discussed damages, recently exacerbated by the now scheduled foreclosure sale.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter its order granting judgment for the following:

A.)   A protective order against any foreclosure attempts and actions by the Defendants, their agents, and their assigns.

B.)   For actual damages, costs, and reasonable attorneys' fees;

C.)   For statutory damages pursuant to 12 U.S.C. § 2605, 15 U.S.C. § 1692k(a)(2) and c. 93A, §9;

D.)   Award multiple damages pursuant to M.G.L. c. 93A § 9;

E.)   Award punitive damages;

F.)   Declare that the abusive collection practices set forth above violate the law and any potential foreclosure and/or sale of the Property unlawful and therefore void;

G.)   Award reasonable attorney's fees and costs pursuant to 12 U.S.C. § 2605, 15 U.S.C. §   1692k(a)(3) and c. 93A, §9; and

H.)   Grant such other relief as this Court deems equitable and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand trial by jury in this action of all issues so triable.

Dated:   January 2, 2019                              Respectfully submitted,
                                                                 STEPHEN ZIOLKOWSKI,
                                                                 By his attorneys,


                                                                 /s/   Brian R. Goodwin
                                                                 Brian R. Goodwin, BBO #657251
                                                                 Goodwin Law Firm
                                                                 One East Main St., 10th Floor
                                                                 Rochester, New York 14614
                                                                 585 353 7084 (tele)
                                                                 888 395 7296 (fax)
                                                                 Brian.GoodwinLaw@gmail.com (e)

## VERIFICATION OF COMPLAINT

I, the undersigned, having read the allegations of the foregoing Verified Complaint, hereby certify based upon my personal knowledge and under penalty of perjury that the factual allegations asserted in the Verified Complaint are true and correct, and that matters asserted upon information and belief are believed to be true and correct.

Executed this 3rd day of January, 2019.

STEPHEN ZIOLKOWSKI